IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **EPHREM EYOB,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| **MITSUBISHI CATERPILLAR FORKLIFT AMERICA INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Ephrem Eyob, Plaintiff in the above-captioned cause, makes and files this Original Complaint complaining of and against Defendant Mitsubishi Caterpillar Forklift America Inc. In support, Plaintiff shows as follows:

**I.**

**PARTIES**

1. Plaintiff, Ephrem Eyob ("Eyob"), is an individual residing in Houston, Texas.

2. Defendant, Mitsubishi Caterpillar Forklift America Inc. ("Mitsubishi"), is a foreign entity doing business in the Southern District of Texas. It may be served through its registered agent for service, which is CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136. Plaintiff requests service of process by any means authorized by law.

II.

**JURISDICTION & VENUE**

3. The Court has jurisdiction over the lawsuit pursuant to 28 U.S.C §1331, because the civil actions alleged arise under federal law; specifically, Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§2000e, et. seq. and Prohibited Racial Discrimination, 42 U.S.C. §1981. Venue is proper in this district because a substantial part of the events or omissions giving rise to this claim occurred in this district. The unlawful discrimination complained about in this lawsuit occurred in this district. 42 U.S.C. §§2000e-5(f)(3).

III.

**FACTS**

4. Mitsubishi employed Ephrem Eyob. Originally from Ethiopia, Eyob became an American citizen and was a loyal Mitsubishi employee for 14 years. He worked in a number of different positions while there, moving up from the assembly line making $7.00 an hour to a production supervisor making between $65,000 and $70,000 per year. Eyob had been an exemplary employee. His employee reviews were excellent and he had an unblemished record. He supervised the highest producing forklift assembly line at the plant, overseeing more than 50 employees.

5. In April 2013, Eyob was assigned to a new manager, a white man by the name of Marvin Chasteen ("Chasteen"). Eyob and Chasteen had worked together previously and Chasteen had previously exhibited hostility toward Eyob. When he began supervising Eyob directly in 2013, he immediately exhibited the same hostility toward Eyob, reminding him that "you work for me now" and telling Eyob that he didn't deserve to be a supervisor and that he had only gotten the job because he "just got lucky."

6.     Over the course of the next 12 months, Chasteen proceeded to create an increasingly hostile racial environment and it became clear to Eyob he was being singled out and treated differently because of his race and national origin.  Chasteen was assisted in those efforts by Jimmy Uy, another manager at the plant.

7.     On one occasion, Eyob entered Chasteen's office when Chasteen and Uy were watching a video about native Africans taking part in a ritual.  Chasteen and Uy were commenting on the video in a derogatory fashion, calling the Africans in the video "stupid."

8.     After learning that Eyob was a supporter of President Barack Obama, Chasteen called him into his office to question his support, commenting on the President's race and telling Eyob that black people supported Obama because they thought they were going to get free food and health care from him.

9.     There had previously been a supervisor at Mitsubishi who was African American and had the first name "Wayne."  He had left the company but long thereafter, Chasteen would refer to almost any African American working at Mitsubishi as "Mr. Wayne."

10.    When Chasteen wanted Eyob to come to him, he would often wave his finger at him.  Eyob explained to Chasteen that in the Ethiopian culture, that is considered a very offensive gesture, meaning that the person being waved at is lowly and comparable to garbage.  However, even after asking Chasteen to stop gesturing to him in that manner, Chasteen continued to do so, apparently wanting to antagonize and humiliate Eyob.

11.    During the Houston Livestock Show & Rodeo, Mitsubishi supervisors were invited to conduct tours of the facilities.  Eyob was the only black supervisor that worked under Chasteen and was the only supervisor not invited to either conduct or take part in those tours.

12. Very soon after becoming Eyob's direct supervisor, Chasteen began threatening to fire Eyob and would tell him to "be careful." He would also make up accusations against him such as in May 2013, when he accused Eyob of "creating overtime." Chasteen told Eyob he was "going to get to the bottom of it" and when he did, Eyob "would be gone." Since it was false, no basis for the allegation was ever established and nothing came of it.

13. Chasteen would also go out of his way to make Eyob's job more difficult for him. For instance, there was a time when a number of Eyob's assembly line workers were out sick. Eyob requested that Chasteen provide back-up help but, instead, he simply told Eyob to "deal with it," ignoring the safety and production issues created by the absences.

14. Mitsubishi employs a "progressive discipline" system, meaning that if there's an issue with an employee, he or she first receives a warning, then a reprimand, and only after that is an employee terminated. However, in the case of Eyob, the progressive discipline policy was not followed. In April 2014, Chasteen wrongly accused Eyob of being responsible for a problem with a truck. It was later determined that the problem had not even originated on Eyob's assembly line but, nevertheless, he was immediately terminated after 14 years of loyal service.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. As reflected by Exhibit A, Plaintiff timely filed a charge of discrimination against Defendant with the EEOC. Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC.

**V.**

**RACIAL DISCRIMINATION UNDER TITLE VII**

16. Plaintiff is a black male employee protected under Title VII, 42 U.S.C. §2000e(f).

17. Mitsubishi is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b). At the relevant times hereto, Marvin Chasteen and Jimmy Uy were employed by Defendant as managers with the authority to hire and fire employees.

18. Defendant intentionally discriminated against Plaintiff because of his race in violation of Title VII, 42 U.S.C. §2000e-2, by racially harassing, denying employment opportunities, and treating Plaintiff differently than employees of other races.

19. As alleged herein, Plaintiff was subjected to racially discriminatory intimidation, ridicule and insults which were so severe and/or pervasive that they altered the conditions of Plaintiff's employment and created an abusive working environment.

**VI.**

**RACIAL DISCRIMINATION UNDER 42 U.S.C. §1981**

20. Plaintiff is a member of a protected class, the African American race.

21. At all relevant times, Plaintiff was in a contractual relationship with Defendant within the meaning of 42 U.S.C. §1981. An employee subject to at-will termination under Texas law nevertheless has an implied "contract" with his employer that unlawful discrimination will not be allowed that meets §1981 requirements to maintain an action against an employer for its breach. *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.,* 160 F.3d 1048, 1050 (5th Cir. 1998).

22. During the course of Plaintiff's employment, Defendant violated Plaintiff's rights by depriving Plaintiff of his right to the enjoyment of all benefits, privileges, terms, and conditions

of Plaintiff's employment contract "as is enjoyed by white citizens," in violation of 42 U.S.C. §1981(b).

23. During the course of Plaintiff's employment with Defendant, Plaintiff did not enjoy the same benefits, privileges, terms, and conditions of employment as did white employees.

24. Defendant's treatment, practices, and policies directed toward Plaintiff, as more fully described above, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

25. Through its actions and treatment of Plaintiff, Defendant intended to discriminate against Plaintiff on the basis of race.

## VII.

## **DAMAGES**

26. As a direct result of Defendant's conduct, Plaintiff has suffered damages and losses entitling him to the following remedies:

a. Back pay, including that amount of wages and employment benefits Plaintiff would have earned if he had not been subjected to Defendant's unlawful conduct less wages, or workers' compensation benefits he received in the interim. "Employment benefits" include sick leave pay, vacation pay, profit sharing benefits, stock options, pension fund benefits, housing or transportation subsidies, bonuses, and monetary losses incurred as a result of loss of health, life, dental, or similar insurance coverage.

b. Compensatory damages in the past, which include emotional pain and suffering, inconvenience, mental anguish, expenses incurred in seeking medical treatment therefor, and loss of enjoyment of life; and

    c.    Compensatory damages in the future, which include economic losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## VIII.

## ATTORNEY FEES

27. Plaintiff is entitled to an award of attorney fees (including expert fees) and costs under 42 U.S.C. §12205 and/or 42 U.S.C. §20003-5(k).

## IX.

## ADDITIONAL OR EXEMPLARY DAMAGES

28. In addition to the previously alleged damages (which Plaintiff alternatively seeks), Plaintiff seeks exemplary damages for Defendant's malicious actions, clearly arising from ill will, reckless indifference, spite, evil motive, and with a purpose to injure Plaintiff.

## X.

## JURY DEMAND

29. Plaintiff requests a trial by jury.

## XI.

## PRAYER

30. For these reasons, Plaintiff asks for judgment against Defendant for the following:

    a.    Back pay, including all employee benefits attendant thereto;

    b.    Compensatory damages in the past, including emotional pain and suffering, inconvenience, mental anguish, medical expenses, and loss of enjoyment of life;

    c.    Compensatory damages in the future, including economic losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

    d.    Exemplary damages;

    e.    Attorney fees and court costs; and

    f.    All other relief the Court deems appropriate, at law and in equity.

Respectfully submitted,

**CHRIS BELL P.C.**

__/s/  Chris Bell_____
Chris Bell
TBN 00783631
1800 St. James Place, Suite 105
Houston, Texas 77056
Phone: 713-300-5158
Fax:     713-784-7797
Email: Chris@ChrisBellLaw.com

***ATTORNEYS FOR PLAINTIFF***